**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

BELINDA HOLBROOK,                              :

     Plaintiff,                              :

vs.                                            :          CA 15-0210-C

CAROLYN W. COLVIN,                             :
Acting Commissioner of Social Security,
                                               :
     Defendant.

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits, widow's disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 25 & 26 ("In accordance with provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of counsel at the March 30, 2016 hearing before the Court, it is determined

that the Commissioner's decision denying benefits should be reversed and remanded for further proceedings not inconsistent with this decision.[1]

Plaintiff alleges disability due to chronic obstructive pulmonary disease, spinal stenosis of the cervical spine with associated shoulder pain and upper extremity numbness, and a mood disorder. The Administrative Law Judge (ALJ) made the following relevant findings:

> 1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.
>
> 2.      It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.
>
> 3.      The prescribed period ends on July 31, 2018.
>
> 4.      The claimant has not engaged in substantial gainful activity since March 26, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 5.      The claimant has the following severe impairments: chronic obstructive pulmonary disease, [and] back[] and shoulder pain (20 CFR 404.1520(c)).
>
> .      .      .
>
> 6.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> .      .      .

---

[1]      Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 25 & 26 ("An appeal from a judgment entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

**7.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant must alternate between the sit and stand positions at will. She can occasionally bend, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. She can frequently reach overhead, bilaterally. She can perform frequent handling, fingering, and feeling. She must avoid concentrated exposure to extreme cold, heat, wetness, and humidity. She must avoid all exposure to fumes, odors, dust, gas, unprotected heights, dangerous machinery, and uneven surfaces. She can perform no more than simple, short instructions and simple work related decisions with few work place changes at unskilled work. She can make only simple, work-related decisions in a low stress work environment. She is unable to frequently work in close proximity to others due to concentration issues, that is, she can only work in the public.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

In her initial claim, she alleged chronic obstructive pulmonary disease, and back and shoulder pain. On appeal, she indicated the pain in her neck and shoulder was radiating to the other side; her arms and hands were numb; and she could not turn her head to the left without pain. She reported it was getting harder to reach for items without sharp pains in her neck and shoulders. Her current medication list included medications for depression/mood swings, chronic obstructive pulmonary disease, allergies, and neck and shoulder pain.

In a function report, the claimant indicated the following: She and her father awake and eat breakfast from prior prepared meals with the help from her sister. This eliminates the need to wash dishes. They microwave in paper plates. She reminds her father to take his medication. She needs no help with her persona care. She prepares her own meals from the already prepared meals and sandwiches. With her sister's help, she does light cleaning. She does no yard work because of neck pain, arm numbness, and shortness of breath. When she travels, she drives or rides in a car. She shops for groceries and necessities, weekly. She is able to manage money. She spends time with others daily, talking on the phone and at church. She goes to church, the grocery store, and doctor appointments on a regular basis. She needs no reminders to go to these places. She needs no one to accompany her. She gets along with family, friends, and neighbors. She is unable to lift over five pounds. Kneeling, squatting, and bending are difficult. Bending causes shoulder and neck pain and dizziness. She can follow written and spoken instructions. She has no problem getting along with authority figures. She has not been fired from a job because of problems getting along with others. She adjusts to handle stress and changes in routine.

At the hearing, she testified to the following: She cannot work because of neck and shoulder pain. Her neck pain causes arm numbness; and activity causes shortness of breath requiring her to lie down during the day. She uses an inhaler for flare-ups. Her pain without medication is an 8/10 and with medication, a 6/10. Her medication causes grogginess. She sees a doctor regularly.

She has had really bad mood swings. Her mother took her to mental health where she started treatment. She does not have problems with her anxiety/mood swings as long as she takes her medication; and she has not been hospitalized overnight since March of 2012.

She helps care for her father who has dementia. She reminds him about his medication. She has begun dating again. She reads a lot—about three to four books per month. She goes grocery shopping, visiting her grown children[,] and she goes to church every Sunday. She has a driver's license[] and she drove herself to the hearing. She dresses and bathes, independently. She cooks, makes the beds, and washes dishes and vacuums. She can read and write. She uses no recreational drugs or alcohol. She stopped smoking cigarettes in January.

In terms of the claimant's impairments, by way of history, in June of 2011, she was seen and treated at Cahaba Mental Health Center for dysthymic disorder, late onset type. She reported doing well on her medication until she ran out. She voiced concerns about getting rid of a used car business. In December of 2011, status post[] her husband dying in a trucking accident and her mother being diagnosed with a brain tumor, she

presented again and was treated for dysthymic disorder, late onset type and bereavement.

The claimant was seen and treated in the emergency room in March of 2012 because of flu-like symptoms. He head, eyes, ears, nose, and throat exam was normal. Her respiratory [examination] revealed no distress, clear breath sounds, no wheezes, rhonchi, or crackles; and she had bilaterally[] equal breath sounds. Her respiratory effort was easy. Her cardiovascular [examination] was normal. She had no range of motion limitations. She had a normal chest X-ray. She was treated with medication. She was admitted for influenza-like illness. Her discharge diagnosis included acute bronchitis, chronic obstructive pulmonary disease, urinary tract infection, and depression. During her stay, her cough [] improved[] and she was discharged home in stable condition. She was also seen and treated in the emergency room in May of 2012 because of neck and shoulder pain. Her lungs were clear during this visit. Her shoulder and neck X-ray revealed no fracture and minimal AC [] degenerative joint disease.

On April 17, 2012, the claimant was seen for follow-up to a previous hospital visit for burning sensation while urinating. She did not use drugs or alcohol. Her systems review was negative, including pulmonary. Her physical exam revealed clear lungs to auscultation. Her cardiovascular and musculoskeletal exams were also normal. She was assessed with recurrent chronic cough, chronic obstructive pulmonary disease/bronchitis, urinary tract infection, dyslipidemia, fatigue, and depression with anxiety. She was treated with medication. At her two-week follow-up in May, her dysuria had resolved. Her lungs and musculoskeletal exams were normal. Her mammogram was negative.

Her cervical spine X-ray from May 30, 2012 revealed normal operative fusion levels at C5-C6 and C6-C7; there was very severe bilateral foraminal stenosis at C3-C4 and facet hypertrophy was creating at least moderate foraminal stenosis on the left and right side at all the other foramen; and there was no severe canal stenosis demonstrated.

The claimant was seen and treated by Donald Overstreet, M.D., between September of 2012 and August of 2013 for sinus problems, back pain, allergic rhinitis, chronic obstructive pulmonary disease, otitis media, and cough and treated with medication. In July of 2013, Dr. Overstreet opined that because of the claimant's spinal stenosis and chronic obstructive pulmonary disease, she was not adequately able to perform activities in a working environment. Partial, rather than great[,] weight is assigned to this opinion because Dr. Overstreet treated the claimant; however, the undersigned disagrees that the claimant is not able to perform work activity.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be

expected to cause the alleges symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. The claimant is not credible. She says she cannot work because of neck and shoulder pain. However, the objective medical evidence is not consistent with disability. During a medical visit while she was being treated for flu-like symptoms, upon physical examination, her head, eyes, ears, nose, and throat exam were normal. Her respiratory [examination] revealed no distress, clear breath sounds, no wheezes, rhonchi, or crackles; and she had bilaterally[] equal breath sounds. Her respiratory effort was easy. Her cardiovascular [examination] was normal. She had no range of motion limitations; and she had a normal chest X-ray. During her stay, her cough [] improved[] and she was discharged home in stable condition. At a later visit in May of 2012, when she complained of neck and shoulder pain, her lungs were clear; and her shoulder and neck X-ray revealed no fracture and *minimal* AC [] degenerative joint disease.

She also testified about a mood disorder already discussed above and found nonsevere. Plus, she testified that she does not have problems with her anxiety/mood swings as long as she takes her medication; and she has not been hospitalized overnight since March of 2012; and, as noted above, during a mental health visit, she reported she was "fine".

What is more inconsistent with disability is her routine of activities of daily living. She testified to the following: She helps care for her father who has dementia. She reminds him about his medication. She has begun dating again. She reads a lot—about three to four books per month. She does grocery shopping, visit[s] her grown children[,] and she goes to church every Sunday. She has a driver's license[,] and she drove herself to the hearing. She dresses and bathes[] independently. She cooks, makes the beds, [] washes the wishes and vacuums[,] and she can read and write. In conclusion, the undersigned finds this behavior and activity indicative that the claimant's impairments are not as disabling as alleged.

In sum, the above residual functional capacity assessment is supported by the fact that the signs, symptoms, and laboratory findings are insufficient and inconsistent with the claimant's allegations.

**8.     The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

.     .     .

**9.     The claimant was born on February 25, 1962 and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).**

**10.     The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

**11.    The claimant has acquired work skills from past relevant work (20 CFR 404.1568).**

.    .    .

**12.    Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).**

.    .    .

The vocational expert was asked if any occupations exist which could be performed by an individual with the same age, education, past relevant work experience, and residual functional capacity as the claimant, and which require skills acquired in the claimant's past relevant work but no additional skills. The vocational expert responded and testified that representative occupations such an individual could perform include: storage facility rental clerk (light and unskilled), DOT# 295.367-026, 6,900 local jobs available and 332,000 national jobs available and self-service store attendant (light and unskilled), DOT# 299.677-010, 45,000 local jobs available and 3,300,000 national jobs available.

Pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles except for the sit and/or stand option which is based upon the vocational expert's education, training, and experience.

Accordingly, although the claimant's additional limitations do not allow the claimant to perform the full range of light work, considering the claimant's age, education and transferable work skills, a finding of "not disabled" is appropriate under the framework of Medical-Vocational Rule 202.15.

**13.    The claimant has not been under a disability, as defined in the Social Security Act, from March 26, 2012, through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 19-20, 21, 21-24, 25 & 25-26 (internal citations & footnote omitted; emphasis in original).)   The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and, thus, the hearing decision became the final decision of the Commissioner of Social Security.

## DISCUSSION

> In all Social Security cases, an ALJ utilizes a five-step sequential evaluation
>
> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[2] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that she is unable to perform her previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that she cannot do her past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

---

[2]	"Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform those light jobs identified by the vocational expert, is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[3] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Holbrook asserts four reasons why the Commissioner's decision to deny her benefits is in error (*i.e.,* not supported by substantial evidence): (1) the ALJ's RFC assessment is not rooted in the medical evidence; (2) the ALJ erred in failing to give adequate weight to the opinion of the treating physician, Dr. Donald Overstreet; (3) the ALJ erred in failing to acknowledge her severe mental impairment; and (4) the ALJ's credibility finding is flawed. The undersigned considers these claims together within the context of the ALJ's RFC assessment.

---

[3]     This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins, supra,* 457 Fed. Appx. at 870 n.5 (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)). Here, the ALJ's RFC assessment consisted of the following: "**After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant must alternate between the sit and stand positions at will. She can occasionally bend, balance, stoop, kneel, crouch, and crawl. She can never climb ladders, ropes, or scaffolds. She can frequently reach overhead, bilaterally. She can perform frequent handling, fingering, and feeling. She must avoid concentrated exposure to extreme cold, heat, wetness, and humidity. She must**

**avoid all exposure to fumes, odors, dust, gas, unprotected heights, dangerous machinery, and uneven surfaces. She can perform no more than simple, short instructions and simple work related decisions with few work place changes at unskilled work. She can make only simple, work-related decisions in a low stress work environment. She is unable to frequently work in close proximity to others due to concentration issues, that is, she can only work in the public.**" (Tr. 21 (emphasis in original).)

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd*, 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[4] However,

---

[4]     It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately (Continued)

in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue,* 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, even if this Court was to find that the ALJ properly analyzed Dr. Overstreet's opinion, which is simply not the case, the ALJ's RFC assessment cannot be found to be supported by substantial evidence inasmuch as the ALJ does not explain, when summarizing the evidence of record, how the medical evidence supports each component of his RFC assessment. Significantly, the ALJ does not point to evidence in

---

explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna,* 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ ***could have*** relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion].  However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support.  Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen,* 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

the record which establishes that Holbrook can "*frequently*" reach overhead, bilaterally, and perform "*frequent*" handling, fingering, and feeling (Tr. 21 (some emphasis supplied)),[5] and this Court cannot find such evidence, particularly in light of the uncontroverted x-ray evidence of record which establishes very severe bilateral foraminal stenosis[6] at C3-C4 and facet hypertrophy creating at least moderate foraminal stenosis on the left and right side at all the other foramen (Tr. 316). In other words, it is not apparent to the undersigned how the ALJ applied and analyzed the foregoing x-ray evidence (and any other pertinent evidence of record, including plaintiff's testimony) vis-à-vis his RFC findings that plaintiff is capable of performing frequent overhead reaching and handling.[7] Accordingly, the undersigned finds that the ALJ's RFC assessment fails to provide an articulated linkage to the medical evidence of record,[8] and, therefore, this cause need be remanded to the Commissioner of Social Security for further consideration not inconsistent with this decision. Stated somewhat differently,

---

[5]     "'Frequent' means occurring from one-third to two-thirds of the time." *See generally* SSR 83-10.

[6]     Stenosis is a "narrowing or stricture of a duct or canal." SLOANE-DORLAND ANNOTATED MEDICAL-LEGAL DICTIONARY, 487 (Supp. 1992).

[7]     Of course, the light jobs identified by the VE and relied upon by the ALJ, that is, work as storage-facility rental clerk and self-service store attendant, require frequent reaching and handling. *Compare* DOT 295.367-026 *with* DOT 299.677-010.

[8]     The linkage requirement is simply another way to say that, in order for this Court to find that an RFC determination is supported by substantial evidence, ALJs must "show their work" or, said somewhat differently, show *how* they applied and analyzed the evidence to determine a plaintiff's RFC.  *See, e.g., Hanna*, 395 Fed. Appx. at 636 (an ALJ's "decision [must] provide a meaningful basis upon which we can review [a plaintiff's] case"); *Ricks*, 2012 WL 1020428, at *9 (an ALJ must "explain the basis for his decision"); *Packer*, 542 Fed.Appx. at 891-892 (an ALJ must "provide *enough reasoning* for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole[]" (emphasis added)).  Thus, by failing to  "show his work," the ALJ has not provided the required "linkage" between the record evidence and his RFC determination necessary to facilitate this Court's meaningful review of his decision.

the ALJ has failed to provide this Court with sufficient reasoning for determining that the proper legal analysis has been conducted.[9]

In addition to the foregoing, the Court also finds that the ALJ committed error in analyzing the opinions proffered by Dr. Overstreet. On July 12, 2013, Dr. Overstreet completed a Clinical Assessment of Pain form ("CAP") and thereon indicated that due to plaintiff's spinal stenosis and COPD "she is not adequately able to perform daily activities in a working environment." (Tr. 368.)[10] In addition, Overstreet opined the following on the CAP: (1) pain is present to such an extent as to be distracting to adequate performance of daily activities or work; (2) physical activity—such as walking, standing, bending, moving of extremities, etc.—would increase pain to such an extent that bed rest and/or medication is necessary; and (3) the side effects of prescribed medication totally restrict plaintiff and cause her to be unable to function at a productive level of work. (Tr. 368.)

The law in this Circuit is clear that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'" *Nyberg v. Commissioner of Social Security*, 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished), quoting *MacGregor v. Bowen*, 786 F.2d 1050,

---

[9]     The undersigned would note, however, that the ALJ did not err in failing to acknowledge or analyze the RFC assessment completed by A. Perry, a Single Decisionmaker, as argued by plaintiff. (*See* Doc. 16, at 7.) Perry is not an acceptable medical source, *see Siverio v. Commissioner of Social Security*, 461 Fed.Appx. 869, 871-872 (11th Cir. Feb. 23, 2012) (per curiam) and, therefore, her opinion is entitled to no weight, *compare id.* at 871 ("'SDM-completed forms are not opinion evidence at the appeals level.'") *with Brown v. Astrue,* 2012 WL 920973 (M.D. Fla. Mar. 19, 2012) (finding that an RFC assessment completed by an SDM with no apparent medical credentials is not an opinion of an acceptable medical source and is not entitled to any weight) and *Hall v. Astrue,* 2012 WL 2499177, *2-3 (N.D. Ala. Jun. 22, 2012) (finding ALJ erred in "affording any weight, even minimal weight," to the assessment of the SDM).

[10]     Overstreet also indicated on a Disability Questionnaire that Holbrook is incapable of performing a full-time job. (Tr. 369.)

1053 (11th Cir. 1986) (other citations omitted). In other words, "the ALJ must give the opinion of the treating physician 'substantial or considerable weight unless "good cause" is shown to the contrary.'" *Williams v. Astrue,* 2014 WL 185258, *6 (N.D. Ala. Jan. 15, 2014), quoting *Phillips, supra,* 357 F.3d at 1240 (other citation omitted); *see Nyberg, supra,* 179 Fed.Appx. at 591 (citing to same language from *Crawford v. Commissioner of Social Security,* 363 F.3d 1155, 1159 (11th Cir. 2004)).

> Good cause is shown when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart,* 357 F.3d 1232, 1241 (11th Cir. 2004). Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error. *Moore* [*v. Barnhart*], 405 F.3d [1208,] 1212 [(11th Cir. 2005)].

*Gilabert v. Commissioner of Social Sec.,* 396 Fed.Appx. 652, 655 (11th Cir. Sept. 21, 2010) (per curiam).

In this case, the entirety of the ALJ's analysis relative to Dr. Overstreet's "opinions" is the following: "In July of 2013, Dr. Overstreet opined that because of the claimant's spinal stenosis and chronic obstructive pulmonary disease, she was not adequately able to perform activities in a working environment. Partial, rather than great[,] weight is assigned to this opinion because Dr. Overstreet treated the claimant; however, the undersigned disagrees that the claimant is not able to perform work activity." (Tr. 23-24.) Had this been the extent of Dr. Overstreet's opinion, the undersigned would have to necessarily agree with the ALJ's analysis since the ability to perform activities in a working environment is a dispositive issue reserved to the Commissioner, *compare Kelly v. Commissioner of Social Security,* 401 Fed.Appx. 403, 407 (11th Cir. Oct. 21, 2010) ("A doctor's opinion on a dispositive issue reserved for the Commissioner, such as whether the claimant is 'disabled' or 'unable to work,' is not

15

considered a medical opinion and is not given any special significance, even if offered by a treating source[.]") *with Lanier v. Commissioner of Social Security,* 252 Fed.Appx. 311, 314 (11th Cir. Oct. 26, 2007) ("The ALJ correctly noted that the opinion that Lanier was unable to work was reserved to the Commissioner.").  However, this was not the "end" of Dr. Overstreet's opinion; instead, as aforesaid, Dr. Overstreet offered numerous opinions directed to the pain experienced by plaintiff, how physical activity impacts plaintiff's pain, and the limitations attendant to plaintiff's medication side effects. (Tr. 368.) The ALJ did not even acknowledge these opinions of Dr. Overstreet,[11] much less offer specific reasons for rejecting them. (*Compare id. with* Tr. 23-24.) Accordingly, this Court finds the ALJ's error in this regard reversible. *Compare Nyberg, supra with Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1179 (11th Cir. 2011) ("[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion. . . . In such a situation, 'to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' . . . The ALJ did not mention the treating physician's medical opinion, let alone give it 'considerable weight.' Likewise, the ALJ did not discuss pertinent elements of the examining physician's medical opinion, and the ALJ's conclusions suggest that those elements were not considered. It is possible that the ALJ considered and rejected these two medical opinions, but without clearly articulated grounds for such a rejection, we cannot determine whether the ALJ's conclusions were rational and supported by

---

[11]     The Court also finds troubling the ALJ's failure to make mention of at least the highlights of Dr. Overstreet's treatment of plaintiff (*see, e.g.,* Tr. 342-369 & 383-437), including that he injected plaintiff's right shoulder on at least one occasion (*see id.* at 401).

substantial evidence. Accordingly, the Secretary's decision is reversed. On remand, the ALJ must explicitly consider and explain the weight accorded to the medical opinion evidence.").[12]

<u>**CONCLUSION**</u>

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 11th day of May, 2016.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[12]     Given these articulated bases warranting a remand of this action, it is not necessary for this Court to address plaintiff's other assignments of error. *See Pendley v. Heckler,* 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal, we do not consider the appellant's other claims."). However, the undersigned is curious about another matter which the ALJ can address on remand and that is why the administrative decision contains no recognition that plaintiff's application was also for supplemental security income (*see* Tr. 17-26 (no citations to Title XVI SSI regulations); *compare id. with* Tr. 195-200 (application for SSI)).